Per Curiam.
The County Court of Claibourne, in December term of that court, in the year 1801, appointed Walter Evans, the plaintiff, to be the clerk of that court, who took the oaths and gave bond with sureties as required by the act of 1794, ch. 1, § 50, and he acted in that office till removed, in February term, 1816. In August term, 1812, some of his sureties having removed themselves out of the county, the court required a new bond with sureties, which he gave. ■ And in November term, 1815, Ransom Day and Abraham Fitch, two out of four of his sureties, gave him a written notice, served on him the 17th November, 1815, to give new bond with sureties on the Monday of February term, 1816, that they might be released. He did not on that day give the bond or other sureties. On Wednesday * next following, being the 14th of November, the court recorded his failure, declared the office surrendered, that the same was vacant, and proceeded on the same day to elect Benjamin Cloud, who took the oaths, gave bond, and had the records delivered to him by order of the court. On Thursday the 15th of November, the court adjourned. Evans gave notice that he would move the Circuit Court for a mandamus to restore him ; and he accordingly moved the court for the mandamus on the 18th of April, 1816, and the court refused it. Whereupon he appealed to, this court. And now the questions are, has he a right to be restored ? Is a mandamus the proper remedy ? Must this court issue the mandamus or direct the Circuit Court to do it ?
Has he a right to be restored ? The Constitution of this State, article 5, § 10, is in these words, “ No free man shall be taken or imprisoned or disseised of his freehold, &c., but by the judgment of his peers or the law of the land.” He may be removed on conviction by a jury, of any such act or omission as amounts to a misbehavior, for which, by law, he may be removed. May the act or omission be ascertained by the court ? If it occur in court and appear on the records of the court, it need not be ascertained by verdict any more than a fact admitted by demurrer, or established by a judgment of the court; which, being of record, cannot be denied. A verdict *23 cannot falsify that which appears of record, nor make it more undeniable ; and the only question is whether the act of 1811, ch. 47, be opposed by the Constitution ? For if it be, it was void ah initio. The Legislature may pass all laws not forbidden by the letter or spirit of the Constitution. It is not against either to prescribe the duties of a clerk; that has been done by numerous acts, dictated by public necessity or convenience ever since clerks were first directed to be appointed. The Legislature may declare what act or omission shall amount to a forfeiture of * his office as it did by 1794, ch. 1, § 50; 1811, ch. 17, § 1; 1796, ch. 7, § 10. It may enact for the public security, that not giving new security when the old becomes incompetent, shall be a failure of duty which shall vacate the office. 1812, ch. 16. Why not? And why may it not enact the same for the safety of individuals, whose welfare, as a part of the people, the Legislature are as much bound to provide for as for the whole. The welfare of all consists in the safety and welfare of each. No principle exists which renders the law of 1811 unfavorable to the principles of freedom, to induce the court to draw it possibly within the equity of constitutional prohibitions. The surety may wish to move from the State : advanced age, or a dangerous disorder, may suggest the propriety of settling his affairs. He may privately know of circumstances -which render it prudent that he should be no longer responsible for the clerk. Is it unreasonable, under such circumstances, that the Legislature should provide a remedy for his relief ? If the law be not unconstitutional, then what is its meaning ? The clerk must have notice, that he may provide sureties by the ensuing term, and not be surprised by a sudden requisition. He is to give new sureties at the next term; at which part of the term depends upon various considerations. It should be at the same point of time on which the old sureties are discharged. For by the act of 1794, ch. 1, § 50, he cannot legally act before security be given or without security given. The sureties are entitled to be discharged as soon as the court can be applied to for their exoneration. Their rights cannot be made dependent on the tergiversation of the clerk. Whenever they do what is required of them for the procurement of this exoneration, they ought to be discharged, and not to be kept liable by the omission of the clerk. It is not like the case where a clerk may be commissioned and act till a future term, when he shall give *24 security or lose the office. That is a condition * subsequent, and may well be complied with in any part of the term. But here security is a condition precedent, without which he cannot legally act at all. The sureties, therefore, ought to be offered on the first day of the term, to the end that he may not act without security or the public be without a clerk ; one of which would be the consequence of his failure, and both of which the law forbids. Moreover, the act of 1796, ch. 3, § 1, requires that the election to supply a vacancy should be on the second day of the term, and be advertised on the first; and this cannot be, if the vacancy only take place at the end of the term. This act is only directory, perhaps, but it is in pari materia with all the other acts upon this subject, and may be called in to aid in their interpretation. Then the meaning of the act has been pursued in this instance, and the removal by the County Court is hot subject to any legal objection. It is useless to inquire whether the mandamus be a proper remedy, or whether it ought to be issued by this court or the Circuit Court.

Judgment of the Circuit Court affirmed.

See King’s Digest, 3272.